IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JUDITH JOHNSON and LOUIS          :
JOHNSON,                          :
                                  :
        Plaintiffs,               :
                                  :
    v.                            : Civil Action No. 08-593-JJF
                                  :
ROBERT PORTZ, M.D., and           :
THOMAS CATHCART, P.A., and        :
ALI DELBAKHSH, M.D., and          :
BEEBE MEDICAL CENTER, SUSSEX      :
EMERGENCY ASSOCIATES, L.L.C.,     :
and CARDIOLOGY CONSULTANTS,       :
P.A.,                             :
                                  :
        Defendants.               :

Leon Aussprung, Esquire of LAW OFFICE OF LEON AUSSPRUNG, M.D.,
LLC, Philadelphia, Pennsylvania.
Natalie Wolf, Esquire and Timothy E. Lengkeek, Esquire of YOUNG,
CONAWAY, STARGATT, & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Plaintiffs.

John D. Balaguer, Esquire and Jennifer Hurvitz Burbine, Esquire
of WHITE & WILLIAMS, Wilmington, Delaware.

Attorneys for Defendants Robert Portz, Thomas Cathcart, and
Sussex Emergency Associates LLC.

Dennis D. Ferri, Esquire and Allyson Marie Britton, Esquire of
MORRIS JAMES LLP, Wilmington, Delaware.

Attorneys for Defendants Ali Delbakhsh and Cardiology
Consultants, P.A.

Bradley John Goewert, Esquire; Judith M. Kinney, Esquire and
Lorenza Anna Wolhar, Esquire of MARSHALL, DENNEHEY, WARNER,
COLEMAN, & GOGGIN, Wilmington, Delaware.

Attorneys for Defendant Beebe Medical Center.

---

**MEMORANDUM OPINION**

April 22, 2010
Wilmington, Delaware.

Farnan, District Judge.

Pending before the Court are competing Motions for Partial Summary Judgment. Plaintiffs Judith Johnson and Louis Johnson filed a Motion For Partial Summary Judgment Concerning Defendant Beebe Medical Center's EMTALA Violation. (D.I. 138.) Defendant Beebe Medical Center, Inc. ("Beebe") then filed its Motion For Partial Summary Judgment On Plaintiffs' Claims Under the Emergency Medical Treatment And Active Labor Act. (D.I. 140.) Beebe's Motion was subsequently joined by Defendants Thomas Cathcart, Robert Portz, and Sussex Emergency Associates LLC. (D.I. 146.) A pre-trial conference was held on February 17, 2010. For the reasons discussed, Plaintiffs' Motion will be denied and Defendants' Motion will be granted as it relates to stabilization and denied as it relates to screening.

## I. BACKGROUND

Plaintiffs Judith Johnson and Louis Johnson filed this action against six Defendants: Beebe, Dr. Robert Portz, M.D., Thomas Cathcart, P.A., Sussex Emergency Associates LLC, Dr. Ali Delbakhsh, M.D., and Cardiology Consultants PA. Plaintiffs' complaint alleges claims under both common law medical malpractice and the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). (D.I. 1.) The instant motions relate to Plaintiffs' claim under EMTALA which is directed solely

2

against Defendant Beebe.

The relevant events took place on May 6, 2007, when Plaintiff Judith Johnson presented to the Emergency Department at the Beebe Medical Center. (D.I. 143 at 4.) Ms. Johnson sought medical assistance because she had persistent indigestion, excessive belching, and chest pain. (D.I. 142 at 2.) The parties dispute the nature of Ms. Johnson's chest pain at that time. Plaintiffs refer to the chest pain as "a chief complaint of substernal chest pain" (D.I. 143 at 4) while Defendants list the chest pain as merely one of the presented symptoms. (D.I. 142 at 2.)

Ms. Johnson presented to the Beebe Medical Center at 7:21 PM.[1] She was evaluated by the triage nurse at 7:35 PM. Following a physical exam at 7:45, an electrocardiogram ("EKG") was performed at 7:53 PM and interpreted at 7:55 PM. The EKG showed that Ms. Johnson was having a heart attack. Prior to notice of the heart attack, Ms. Johnson had not been put on oxygen, nitroglycerine, or aspirin. There is no documentation of placing Ms. Johnson on a continuous electronic cardiac monitor.

Shortly after 7:55, Ms. Johnson became unresponsive. A code was called and from about 8:00 PM to 8:34 PM measures were taken

---

[1]The time-line of Ms. Johnson's presentation to the Emergency Department is referenced throughout the materials of both parties. The Court used the expert reports of both parties to establish the time-line. (See D.I. 143 Ex. J (expert report of Dr. James Hubler); D.I. 159 Ex. A (expert report of Dr. Errol Green).)

to revive Ms. Johnson, including CPR, multiple shocks, and the administration of medicines.  At 8:34 PM Ms. Johnson was pronounced dead by Dr. Portz.  At 9:10 PM Ms. Johnson was determined to be alive and breathing by a hospital technician who had been asked to transport Ms. Johnson to the morgue.  Following the discovery that Ms. Johnson was alive, additional measures were undertaken to assist her.  Ms. Johnson did survive but suffered permanent neurologic damage.

Beebe has a protocol for dealing with patients who present with chest pain.  (D.I. 143 Ex. B.)  The protocol consists of eleven components.  (Id.)  All of Beebe's protocols are implemented according to the Emergency Services Manual, which contains an initial "Policy" which provides "guidelines for the implementation of approved protocols."  (Id.)  The fourth guideline states that "[p]rotocol utilization will be based on [a] nursing assessment."  (Id.)  It is clear that not all of the eleven components of the chest pain protocol were performed or followed in the care of Ms. Johnson.

## II. LEGAL STANDARD

### A. Summary Judgment Legal Standard

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

   To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . .  In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted).  However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.  Id.

## B. Applicable Legal Principles Of The Emergency Medical Treatment And Active Labor Act

The Emergency Medical Treatment and Active Labor Act

("EMTALA") requires participating hospitals[2] to provide certain

basic medical care to individuals who seek medical care in

emergency rooms.  Torretti v. Main Line Hosps., Inc., 580 F.3d

168, 172 (3d Cir. 2009).  EMTALA states:

> (a) Medical screening requirement. In the case of a hospital
> that has a hospital emergency department, if any individual
> (whether or not eligible for benefits under this title [42 USC
> §§ 1395 et seq.]) comes to the emergency department and a
> request is made on the individual's behalf for examination or
> treatment for a medical condition, the hospital must provide
> for an appropriate medical screening examination within the
> capability of the hospital's emergency department, including
> ancillary services routinely available to the emergency
> department, to determine whether or not an emergency medical
> condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C. § 1395dd.  "The text of EMTALA does not define

'appropriate medical screening,' but Circuit Courts of Appeal

have interpreted the statute as requiring hospitals to provide

uniform screening 'to all those who present substantially similar

complaints.'" Kauffman v. Franz, Civ. No. 07-5043, 2009 U.S.

Dist. LEXIS 88749, *5 (E.D. Pa. Sept. 24, 2009)(quoting Cruz-

Queipo v. Hosp. Espanol Auxilio Mutuo de Puerto Rico, 417 F.3d

67, 70 (1st Cir. 2005)); see also Marshall v. East Carroll Parish

Hosp. Serv. Dist., 134 F.3d 319, 322 (5th Cir. 1998)(noting that

appropriate screening is judged by whether it was performed

---

[2]All parties agree that Defendant Beebe Medical Center is a
hospital covered by the scope of EMTALA because it participates
in the federal Medicare program.

equitably when compared with other patients who present with similar symptoms). Additionally, "[h]ospitals may develop their own screening procedures; [but when they do] EMTALA requires that hospitals apply those procedures even-handedly to all patients." Kauffman, 2009 U.S. Dist. LEXIS 88749, *5 (citing Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1138 (8th Cir. 1996)); see also Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 797 (10th Cir. 2001)(noting that because deference is given to a hospital in determining the screening it is capable of, hospitals will be held to the standard they create); Feighery v. York Hosp., 59 F. Supp. 2d 96, 104 (D. Me. 1999)("[A] plaintiff can show a disparate screening under the EMTALA by showing that a hospital refused to follow its own screening procedures in a particular instance."). De minimums variations from standard hospital procedures do not necessarily amount to violation of hospital policy. See Repp v. Anadarko Mun. Hosp., 43 F.3d 519, 523 (10th Cir. 1994). Ultimately:

> EMTALA does not create a federal medical malpractice cause of action. The issue in an EMTALA case is not whether a physician should have detected an emergency condition, but whether a physician provided appropriate screening and stabilization for those conditions the physician perceives the patient to have.

Kauffman, 2009 U.S. Dist. LEXIS 88749, *6 (internal quotation removed).

## III. PARTIES' CONTENTIONS

Although Plaintiffs and Defendant Beebe have each filed Partial Summary Judgment Motions, both Motions are premised on the same law and claim.  Both parties seek summary judgment in their favor on Plaintiffs' claim under EMTALA.  Additionally, both parties argue that the facts support summary judgment in their favor or in the alternative that material issues of fact remain that prevent the other party from obtaining summary judgment.[3]

Plaintiffs contend that they are entitled to relief under EMTALA because under the appropriate medical screening requirement, a hospital that does not follow its own standard screening procedure violates the statute.  (D.I. 143 at 3.) Plaintiffs argue that such a deviation from a standard procedure occurred here and thus constitutes differential treatment and a violation of EMTALA.  (Id.)  To support this argument, Plaintiffs argue that Ms. Johnson faced disparate treatment compared to other patients with similar conditions because the chest pain protocol was not properly carried out in caring for her.  The Johnsons argue that it took too long for Ms. Johnson to be examined and given an EKG and that the remainder of the chest pain protocol was not followed.  (Id.)

---

[3]Plaintiffs do not oppose the portion of Beebe's Motion for Partial Summary Judgment relating to stabilization under EMTALA. (D.I. 158.)  Thus, that portion of Beebe's Motion does not warrant further discussion and will be granted.

Plaintiffs continue that it was obvious that the chest pain protocol should have been followed because Ms. Johnson's chest pain was suspicious of being of cardiac origin because she was 60 years old, a smoker, and the pain was substernal in location. (Id. at 4.)   The Johnsons assert that the potential cardiac nature of the pain was recognized by Defendants, and specifically noted by Defendant Cathcart in his deposition, based on the fact that an EKG was performed, and because that test is performed when cardiac problems are suspected.   (Id. (citing Id. Ex. D).)

Beebe contends that not only is there no evidence of a violation of EMTALA, but there is enough evidence in Beebe's favor to support summary judgment against Plaintiffs on the EMTALA claim.   (D.I. 142, 159.)   Beebe argues that it satisfied EMTALA by "diagnosing an emergency medical condition within minutes of [Ms. Johnson's] arrival to the emergency room, and rendering treatment for the emergency medical condition."   (D.I. 142 at 1.)   Beebe thus asserts that it is evident that appropriate medical screening was performed on Ms. Johnson from the diagnosis of an emergency medical condition.   (Id.)   Lastly, Beebe asks that if the Court should grant its Motion, that the Court decline to exercise supplemental jurisdiction over the remaining state claims because there is no issue of judicial economy or convenience on those claims.   (Id. at 2.)

In response to Beebe's arguments, Plaintiffs argue that Beebe disregards the equal treatment requirement of EMTALA by

equating an eventual diagnosis with equal treatment. (D.I. 161.)
Plaintiffs emphasize that appropriate screening is not defined by
EMTALA, but by a hospital's procedure and again argues that the
chest pain protocol was not properly followed when Defendants
cared for Ms. Johnson. (Id.)

**IV. DECISION**

The Court concludes that neither the Johnsons nor Beebe have
established that no material issues of fact remain in evaluating
the screening requirement of Plaintiffs' EMTALA claim, thus, the
Motions for Partial Summary Judgment will be denied as they
relate to the screening claim. Although both parties moved for
summary judgment on the same issue, that does preclude the
Court's determination that there are remaining issues of material
fact. Both sides assert that there are no questions of fact, but
they do so with different, albeit similar, facts. Ultimately,
there are three issues of fact that the Court concludes prevent
finding summary judgment. There are remaining issues of fact
regarding (1) the interpretation of Ms. Johnson's chest pain and
how it impacts the screening process, (2) the use of Beebe's
chest pain protocol, and (3) the reasonableness of the time taken
to screen Ms. Johnson as manifested through the administration of
an EKG.

## V. CONCLUSION

For the reasons discussed within, the Court will deny
Plaintiffs' Motion For Partial Summary Judgment Concerning
Defendant Beebe Medical Center's EMTALA Violation (D.I. 138) and
will grant in part and deny in part Defendant Beebe Medical
Center, Inc.'s Motion For Partial Summary Judgment On Plaintiffs'
Claims Under the Emergency Medical Treatment And Active Labor
Act.  (D.I. 140.)  Defendant Beebe's Motion will be granted as it
relates to stabilization and denied as it relates to screening.

An appropriate order will be entered.